CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JUN 24 2008

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAIME CALLEJAS-URIBE,<br>Petitioner, | )<br>)<br>) |
| v. | )    Case No. 7:07-cv-00446<br>) |
| UNITED STATES OF AMERICA,<br>Respondent. | )    By: Hon. Michael F. Urbanski<br>)    United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Petitioner Jaime Callejas-Uribe ("Callejas-Uribe") brings this action under 28 U.S.C. § 2255, alleging prosecutorial misconduct, trial court error, and several claims of ineffective assistance of counsel, including that counsel failed to file an appeal. By Memorandum Opinion and Order entered March 31, 2008, the court found that it was unable to resolve the issue of whether trial counsel, Russell Darren Bostic ("Bostic"), was ineffective in failing to file an appeal on the existing record and, therefore, ordered an evidentiary hearing on the same. By separate Order entered the same day, the court referred this matter to the undersigned Magistrate Judge to hold an evidentiary hearing and submit proposed findings of fact and a recommended disposition. An evidentiary hearing was conducted on June 6, 2008.

Based on the submissions of the parties, the evidentiary hearing testimony, the transcripts of Callejas-Uribe's guilty plea and sentencing hearings, and the information contained in the pre-sentence report ("PSR"), the undersigned concludes that Callejas-Uribe has met his burden of proving that his counsel was ineffective for failing to consult with him following sentencing regarding filing a notice of appeal. Callejas-Uribe has failed to present any credible evidence suggesting that he instructed trial counsel to file a notice of appeal. However, the record reflects that counsel had a duty to consult with Callejas-Uribe because a rational defendant in Callejas-Uribe's

position would want to appeal, and that no consultation took place. Therefore, the undersigned recommends that respondent's motion to dismiss be denied and that Callejas-Uribe's petition for relief be granted as to his claim that counsel failed to consult with him about a direct appeal.

I.

On December 21, 2005, a federal grand jury returned a One-Count Indictment against Callejas-Uribe and three other defendants charging them with conspiring to distribute, and possession with the intent to distribute, 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine hydrochloride, in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). A Superseding Indictment, adding charges against Callejas-Uribe's co-defendants, was returned on January 25, 2006. Callejas-Uribe appeared before the Honorable B. Waugh Crigler, United States Magistrate Judge for the Western District of Virginia, on June 6, 2006. On that same date, Callejas-Uribe pleaded guilty to Count One of the indictment. There was no plea agreement between the government and Callejas-Uribe.

A written summary of the government's evidence presented at the guilty plea hearing established that on May 19, 2005, a confidential source was interviewed by special agents of the Drug Enforcement Administration ("DEA"). The source indicated that Callejas-Uribe and others were selling large quantities of cocaine in Winchester, Virginia. The source indicated that Callejas-Uribe and others were distributing between 30 and 35 ounces (between 840 grams to 980 grams) of cocaine bi-monthly since January of 2005. This resulted in an excess of 5 kilograms. On June 7, 2005, DEA agents conducted a trash pull at the residence occupied by Callejas-Uribe located at 2235 Roosevelt Blvd., Winchester, Virginia. The agents located cocaine "cutting" materials in the trash. On June 27, 2005, Callejas-Uribe was arrested and advised of his Miranda rights. Callejas-Uribe

admitted that he and others were involved in a conspiracy to distribute cocaine in and around Winchester. He further admitted that he and a co-conspirator, Alejandro Mejia-Delatorre ("Mejia-Delatorre"), would purchase 5 ounces of cocaine a week from other co-conspirators, use cutting agents to cut it to 10 ounces, and subsequently sell the cocaine. Callejas-Uribe indicated that his role was to make cocaine deliveries that were previously arranged by Mejia-Delatorre. A search incident to arrest of the vehicle used by Callejas-Uribe and Mejia-Delatorre yielded 69.2 grams of cocaine.

By Report and Recommendation entered June 8, 2006, Judge Crigler recommended that the court accept the plea of guilty. No objections were filed. Thus, the court accepted Callejas-Uribe's plea on July 5, 2006. During the sentencing hearing on September 18, 2006, the defense objected to the amount of narcotics attributed to Callejas-Uribe in the PSR. The court overruled the objection and determined by a preponderance of the evidence that the confidential source's information, which was the basis of the PSR's narcotics calculations, was reliable. The court noted that a DEA agent was able to confirm with several of Callejas-Uribe's customers that the confidential informant's estimations were accurate and more reliable than the estimations given by Callejas-Uribe and other members of the conspiracy. The United States objected to the PSR's three-level deduction for acceptance of responsibility, which the court likewise overruled.

The PSR established that Callejas-Uribe had a base offense level of 32 and a criminal history category of I. PSR ¶ 13, 37. Callejas-Uribe's offense level was decreased by three points for acceptance of responsibility and two points because he qualified under the safety valve provision of the guidelines. The statutory mandatory minimum and maximum terms for Count One were 10 years to life imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A). PSR ¶ 35. However, it was determined that Callejas-Uribe met the criteria set forth in 18 U.S.C. § 3553(f) and, therefore, that the court

3

should impose a sentence within the applicable guideline range without regard to the statutory minimum sentence. Accordingly, Callejas-Uribe's total offense level was ultimately determined to be 27. PSR ¶ 14; Addendum to the Presentence Report. Based on a total offense level of 27 and a criminal history category of I, the guideline sentence range was a term of imprisonment of 70 to 87 months. PSR ¶ 14; Addendum to the Presentence Report.

Despite this range, the United States argued for a sentence of 120 months, contending that Callejas-Uribe was less than fully candid regarding his role in the drug conspiracy. The court rejected this argument, but found an aggravating circumstance to exist from the fact that Callejas-Uribe "was recruited to sell cocaine before he ever set foot in the United States." (Sentencing Hr'g Tr., Sept. 18, 2006, at 30.) The court ultimately sentenced Callejas-Uribe to 96 months imprisonment, followed by a 5 year term of supervised release. (Sentencing Hr'g Tr., Sept. 18, 2006, at 33.) The court specifically determined that Callejas-Uribe "purposefully entered the United States illegally . . . to distribute controlled substances" and that this was an aggravating factor that compelled the court to vary slightly above the guideline range. (Sentencing Hr'g Tr., Sept. 18, 2006, at 32.) At sentencing, counsel for Callejas-Uribe argued against the upward variance and, following the court's announcement of the sentencing including the upward variance, noted an objection, stating that the defense believed the sentence above the sentencing guidelines to be "an unreasonable sentence." (Sentencing Hr'g Tr., Sept. 18, 2006, at 36.) The Judgment Order was signed and entered on September 29, 2006, and Callejas-Uribe did not note an appeal. See Docket Entry No. 122.

On September 14, 2007, Callejas-Uribe filed this § 2255 motion, pro se, claiming trial counsel provided ineffective assistance in that (1) he failed to challenge Callejas-Uribe's intentional pre-indictment and post-indictment delay; (2) negotiated a guilty plea without a decision on Callejas-

4

Uribe's Motion to Suppress; (3) failed to mitigate Callejas-Uribe's role in the offense charged; and (4) failed to appeal as requested by Callejas-Uribe. Callejas-Uribe further contends that the prosecutor committed misconduct because of a lengthy delay in presenting his case to the grand jury and because of "negotiations at the guilty phase." Finally, Callejas-Uribe alleges "judicial violations" at "pre-trial and guilty stages." On March 31, 2008, the court entered a Memorandum Opinion and Order ordering an evidentiary hearing on the issue of whether Callejas-Uribe requested his attorney to file an appeal. Further, finding that the remaining claims in a habeas petition should be dismissed without prejudice if a district court grants a petitioner's habeas motion due to counsel's failure to file a direct appeal, the court did not reach the merits of Callejas-Uribe's other grounds for relief. See Docket Nos. 12, 13. An evidentiary hearing was held on June 6, 2008. See Docket No. 24.

## II.

At the evidentiary hearing, Bostic testified that the issue of an appeal arose prior to the guilty plea hearing when he and Callejas-Uribe were considering the plea agreement that had been offered by the United States. Bostic testified that, among other things, the plea agreement waived the right to appeal and that, in exchange, the United States would agree to request a sentence at the low end of the guideline range. Bostic testified that the plea agreement was not accepted in order to preserve the right to appeal. Accordingly, Callejas-Uribe ultimately entered a plea of guilty without a plea agreement.

Bostic further testified that during the time between the guilty plea and the sentencing hearing, Bostic and Callejas-Uribe concentrated mainly on the issue of drug weight attributable to Callejas-Uribe and also the possibility of a safety valve reduction at sentencing, rather than the issue

5

of an appeal. Bostic testified that, subsequent to the sentencing hearing, he concluded that Callejas-Uribe received a reasonable sentence due to the safety valve reduction and because the judge was still within the guideline range.[1] Bostic testified that, accordingly, he did not consult with Callejas-Uribe or raise the issue of an appeal with Callejas-Uribe subsequent to the September 18, 2006 sentencing hearing. Bostic testified that Callejas-Uribe never asked him to appeal the conviction on the day of the guilty plea, the day of the sentencing hearing, or anytime thereafter. Bostic testified that had Callejas-Uribe made a timely request to appeal, he would have noted an appeal. Bostic denied that he informed Callejas-Uribe at the conclusion of the sentencing hearing that he would meet with him the next week.

Bostic testified that he received a letter from Callejas-Uribe on September 19, 2006, the day after Callejas-Uribe's sentencing hearing, in which Callejas-Uribe indicated that he did not fully understand the interpreter and that he was unaware of "how many months the judge gave" him. (Evidentiary Hr'g, June 6, 2008, Ex. 1.) Bostic testified that, in response, he sent Callejas-Uribe a letter on October 10, 2006.[2] The letter, written in English, included a copy of the Final Judgment and noted that Callejas-Uribe's sentence was 96 months incarceration. The letter further noted, "as you had not requested any appeal, I did not attempt to appeal the judge[']s sentence. Frankly, I do not believe you would have had anything to appeal." (Resp. Mot. Dismiss, Ex. F.) Bostic testified

---

[1] Bostic testified that, to the best of his recollection, the judge's sentence was within the guideline range. This is incorrect. The original pre-sentence report indicated that Callejas-Uribe's guideline range for imprisonment was 87-108 months; however, at the sentencing hearing, Callejas-Uribe was given the benefit of the safety valve provision and a corresponding two-level reduction. Thus, the revised guideline range was 70-87 months. The court sentenced Callejas-Uribe to 96 months, 9 months above the high end of the guideline range.

[2] The undersigned notes that judgment was entered in Callejas-Uribe's case on September 29, 2006. Accordingly, Callejas-Uribe had ten business days in which to note an appeal. The ten days expired on October 13, 2006.

at the evidentiary hearing that nothing at the sentencing hearing suggested to Bostic that Callejas-Uribe could not understand the interpreter.

Bostic testified that he did not receive any further correspondence from Callejas-Uribe until he received a letter, dated March 16, 2007, inquiring about the status of an appeal. That letter indicated, "I am also writing to inquire about the current status of the appeal you either submitted or will submit on my behalf." (Resp. Mot. Dismiss, Ex. I.) Bostic did not reply to this letter. Bostic finally received a letter, dated July 18, 2007, from Callejas-Uribe requesting a copy of his case file. Bostic responded by sending Callejas-Uribe a copy of his entire case file.

### III.

Callejas-Uribe testified at the evidentiary hearing that, prior to the sentencing hearing, he and Bostic never discussed the possibility of an appeal. Callejas-Uribe testified that he could not understand the interpreter at the sentencing hearing[3] and that he did not hear the court's sentencing determination. However, Callejas-Uribe admitted that he did not make an effort at any time to inform anyone that he could not understand the proceedings. Callejas-Uribe further testified that immediately after the sentencing hearing, Bostic indicated to Callejas-Uribe that "he was going to see [him] later to present an appeal, but he never did."[4] Callejas-Uribe testified that he wanted to

---

[3] Callejas-Uribe testified that there were two interpreters at the sentencing hearing and that he could not understand one but that he could understand "a little bit" of what the other said. The undersigned notes that the transcript indicates that only one translator, Marta Goldstein, was sworn at that hearing.

[4] The court notes that this testimony contradicts testimony presented later at the evidentiary hearing. When the undersigned further questioned Callejas-Uribe as to this conversation, Callejas-Uribe indicated that he did not say anything to Bostic about an appeal and Bostic did not ever use the word "appeal." Moreover, when asked when he made up his mind to appeal, Callejas-Uribe responded that he decided to appeal once he arrived at prison and noted that his friends in prison who "study law" helped him.

7

appeal his sentence because Bostic informed him that he would only receive a sentence of 87 months.[5] Callejas-Uribe testified that he was surprised that he received a sentence of 96 months.

Callejas-Uribe indicated that he heard the judge inform him that an appeal must be filed within ten days but that he did not tell the judge that he wanted to appeal because Bostic "said that he was going to see" him. When questioned as to why he did not mention an appeal in the September 19, 2006 letter to Bostic, Callejas-Uribe indicated that he did not mention an appeal because Bostic "mentioned that he was going to see" him. Callejas-Uribe testified that he wrote Bostic several letters subsequent to that conversation at the sentencing hearing, but that Bostic never responded. Callejas-Uribe contends that he never received the October 10, 2006 letter from Bostic.

## IV.

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must first show that counsel's representation fell below an objective standard of reasonableness, and second, that counsel's defective performance prejudiced defendant. Id. at 688, 694. This same test is applicable to those situations where trial counsel was allegedly ineffective by failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). To establish a Sixth Amendment violation based on counsel's failure to appeal, Callejas-Uribe must prove that counsel was ineffective, and but for that ineffectiveness, an appeal would have been filed. United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citing Flores-Ortega, 528 U.S. 470). The inmate need not show a reasonable probability of success on appeal. See Peguero v. United States, 526 U.S. 23, 28 (1999).

---

[5] Callejas-Uribe testified that Bostic memorialized this in a letter; however, Callejas-Uribe fails to provide the court with such a letter and Bostic testified that he did not recall putting this information in a letter.

8

Where a defendant instructs his attorney to file an appeal and counsel fails to do so, counsel's representation is per se ineffective. Witherspoon, 231 F.3d at 926; accord Flores-Ortega, 528 U.S. at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). However, where the defendant neither instructs his attorney to note an appeal nor explicitly states that he does not wish to appeal, counsel's deficiency in failing to appeal is determined by asking whether counsel consulted with defendant about an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. Consult means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. If counsel has consulted with defendant, the question of deficient performance is easily answered, as counsel performs in a professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal. Id. If counsel has not consulted with defendant, the court must then determine whether counsel's failure to consult with the defendant itself constitutes deficient performance. Id.

Not every failure to consult results in constitutionally deficient performance. Id. at 479. Rather, counsel only has a constitutionally imposed duty to consult where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal) or (2) that the defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 480. "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. at 480. Nonetheless, despite the fact that a

9

defendant pleaded guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea agreement waived his right to appeal. Id.

There is no evidence in the record, beyond Callejas-Uribe's testimony, supporting Callejas-Uribe's contention that he asked Bostic to note an appeal. The undersigned finds Callejas-Uribe's testimony simply unbelievable due in large part to Callejas-Uribe's lack of credibility as evinced by his contradictory testimony and demeanor at the evidentiary hearing. Moreover, Callejas-Uribe makes no mention of an appeal in his September 19, 2006 letter to counsel. Furthermore, Callejas-Uribe did not contact Bostic again until six months later. Accordingly, the undersigned finds Callejas-Uribe not credible and rejects his argument that he requested his attorney to file an appeal.

However, the analysis does not end there. As previously noted, where the defendant neither instructs his attorney to note an appeal nor explicitly states that he does not wish to appeal, counsel's deficiency in failing to appeal is determined by asking whether counsel consulted with defendant about an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. The record is clear that Bostic failed to consult with Callejas-Uribe subsequent to the sentencing hearing. However, counsel only has a constitutionally imposed duty to consult with his client where there is reason to think that a rational defendant would want to appeal. In this particular situation, the undersigned finds that a rational defendant in Callejas-Uribe's position would want to appeal. First, there was no plea agreement entered in this case and, accordingly, no waiver of appeal rights. Thus, Callejas-Uribe would not have risked losing any benefits from a plea agreement if he appealed. Indeed, counsel specifically testified that the plea agreement was not accepted, in part, to preserve the right to appeal. Moreover, counsel's objections to the pre-sentence report were overruled and the court

10

varied upward from the top of the guideline range. Counsel objected at sentencing to the upward variance, stating that he believe it to be unreasonable. Yet, he did not consult with his client about an appeal of the upward variance following sentencing. Thus, it appears that there were potential non-frivolous grounds for appeal which a rational defendant would want to appeal. In light of all these considerations, the undersigned recommends the court find that counsel was required to consult with Callejas-Uribe about an appeal after sentencing, and that Callejas-Uribe is entitled to relief as to this claim.

## V.

As the undersigned finds that counsel was ineffective by not consulting with Callejas-Uribe about an appeal after sentencing, the undersigned recommends that Callejas-Uribe's remaining claims of ineffective assistance of counsel, prosecutorial misconduct, and unspecified judicial violations be dismissed without prejudice. See United States v. Killian, 22 F. App'x 300 (4th Cir. 2001).

## VI.

Based on the foregoing, the undersigned finds that the record reflects that counsel provided constitutionally deficient assistance in failing consult with Callejas-Uribe about an appeal after sentencing. The evidence establishes that Callejas-Uribe expressed no desire to appeal; however, counsel did not consult with him on that subject after sentencing even though there were potential non-frivolous grounds for an appeal and a rational defendant would want to appeal in such a situation. In reaching this finding, the undersigned finds it to be significant that Callejas-Uribe did not enter into a plea agreement limiting his right to appeal and which would have been jeopardized had he appealed, along with the fact that the upward variance constituted a potential non-frivolous

ground for an appeal. Accordingly, the undersigned recommends that respondent's motion to dismiss be denied and that Callejas-Uribe's motion for relief, pursuant to 28 U.S.C. § 2255, be granted to the extent that he be permitted to file a direct appeal at this time.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Glen E. Conrad, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send copies of this Report and Recommendation to petitioner and counsel of record.

**ENTER:** This 24th day of June, 2008.

_____
United States Magistrate Judge